UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAROLINA BRAGG, JUAN
PEROZO, BORISLAVA
RAYNOVA, CATHERINE
THRONEBURG, and IVAN
MILLAN,

        Plaintiffs,

v.                                 Case No: 6:22-cv-265-WWB-EJK

MARRIOTT INTERNATIONAL,
INC.,

        Defendant.

## ORDER

This cause comes before the Court on the parties' Joint Motion for Approval of FLSA Unpaid Wage Claim Settlement Agreement (the "Motion"), filed September 27, 2022. (Doc. 25.) Upon consideration, the Motion is due to be denied without prejudice.

### I.    BACKGROUND

Plaintiffs filed their Amended Complaint on January 12, 2022, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. 1-1.) On February 2, 2022, Defendant, Marriott International, Inc. ("Marriott"), removed the action to this Court. (Doc. 1). Plaintiffs allege they are former employees of Marriott, who worked at the Orlando World Center Marriott Resort & Convention Center in Orlando, Florida, as either cocktail servers or bartenders in the Lobby

Lounge. (Doc. 1-1 ¶ 10, 12.) In those roles, they sold food products, including sushi, to guests; the sushi was prepared in the back of the house by sushi chefs and served to guests by Plaintiffs. (*Id.* ¶¶ 13–15.)

Plaintiffs allege that they were tipped employees within the meaning of the FLSA, 29 U.S.C. § 203(t). (*Id.* ¶ 16.) Plaintiffs state that Marriott afforded itself a tip credit under 29 U.S.C. § 203(m)(2)(A)(ii) when compensating Plaintiffs their minimum wage. (*Id.* ¶ 17.) On or about June 8, 2019, Marriott implemented a mandatory policy requiring Plaintiffs to "tip out" the sushi chefs a minimum of 5% of their sushi sales each night Plaintiffs worked. (*Id.* ¶ 20.) Plaintiffs allege that the sushi chefs did not meet the definition of a tipped employee under the FLSA and related case law. (*Id.* ¶¶ 22–29.) Thus, Plaintiffs allege that Marriott violated the FLSA when it improperly required Plaintiffs to share their tips with the sushi chefs. (*Id.* ¶¶ 19, 29.)

Plaintiffs Millan and Bragg objected to Marriott's intended tip policy with respect to the sushi chefs as early as January 10, 2019, and January 13, 2019, when its implementation was first discussed with the Plaintiffs. (*Id.* ¶¶ 30, 32.) On December 3, 2021, Marriott placed Plaintiffs Millan and Bragg on suspension. (*Id.* ¶ 31, 33.) On December 14, 2021, Marriott terminated Plaintiffs Millan and Bragg. (*Id.*) Plaintiffs allege this termination was pretextual due to their prior complaints about the tip pooling practice. (*Id.* ¶¶ 30–34.)

The Amended Complaint includes the following six causes of action: Count I – Unpaid wage claim in violation of the FLSA (brought by all Plaintiffs); Count II – Unpaid wage claim in violation of the Florida Minimum Wage Act (brought by all

Plaintiffs); Count III – Retaliation in violation of the FLSA (brought by Plaintiffs Bragg and Millan); Count IV – Retaliation in violation of the Florida Minimum Wage Act (brought by Plaintiffs Bragg and Millan); Count V – Retaliation in violation of Florida's Whistleblower Act (brought by Plaintiffs Bragg and Millan); and Count VI - Wages owed under Florida common law and § 448.08, Fla. Stat. (brought by all Plaintiffs). (Doc. 1-1.) Plaintiffs and Defendant have negotiated a compromise and settlement of Plaintiffs' FLSA wage claim (Count I) and, on September 27, 2022, filed this Motion pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Docs. 22, 25.) As the parties explain in their Motion, they have also resolved the remaining claims as follows:

> The Parties have also entered into a separate settlement agreement to fully and finally resolve the non-FLSA wage claims and the three pending retaliation claims in the action. The separate settlement agreements provide for additional monetary compensation to Plaintiffs, for which Plaintiffs have agreed to release all other pending claims in this action, to not seek re-hire, and to not make defamatory statements about Defendant. The separate settlement agreements require Plaintiffs to keep only the terms and existence of each the separate settlement agreements confidential. Pursuant to the terms of the separate settlement agreements, the confidentiality obligation explicitly does not apply to the existence or terms of the FLSA Settlement Agreements that are attached hereto for the Court's approval.

(Doc. 25 at 2 n.1; Doc. 27.) The Court now reviews the Settlement Agreements for each Plaintiff, attached to the Motion as composite Exhibit A. (Doc. 25-1.)

## II.     STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the

context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal"

include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at \*2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

### III. DISCUSSION

#### A. Settlement Sum

In the Motion, the parties represent that Defendant has agreed to pay Plaintiffs the following unpaid wages for work during the relevant time period:

- Plaintiff Bragg - $4,865.90
- Plaintiff Millan – $6,904.94
- Plaintiff Perozo – $3,142.48
- Plaintiff Throneburg – $3,516.31
- Plaintiff Raynova – $5,132.20.

(Doc. 25 at 5.) The parties then state in a footnote that "during the negotiations between the parties, Plaintiffs conceded Defendant had a viable good faith defense,

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

which is why there is no liquidated damages component of the FLSA unpaid wages settlement." (Doc. 25 at 5 n.2) (citing 29 U.S.C. § 259).

However, the Settlement Agreements further break down these totals as follows:

- Plaintiff Bragg - $3,406.13 in unpaid wages; $1,459.77 in liquidated damages
- Plaintiff Millan - $4,833.45 in unpaid wages; $2,071.49 in liquidated damages
- Plaintiff Perozo - $2,199.73 in unpaid wages; $942.65 in liquidated damages
- Plaintiff Throneburg -$2,461.41 in unpaid wages; $1,054.90 in liquidated damages
- Plaintiff Raynova – $3,592.44 in unpaid wages; $1,539.76 in liquidated damages

(Doc. 25-1 at 3, 8, 13, 18, 23.) The Motion does not address this discrepancy.

In their answers to the Court's interrogatories, Plaintiffs claimed they were entitled to considerably more wages than they are receiving in the settlements, set forth as follows:

- Plaintiff Bragg - $14,401.35
- Plaintiff Millan - $14,401.35
- Plaintiff Perozo - $9,576.40
- Plaintiff Throneburg -$7,115.25
- Plaintiff Raynova – $15,194.40

(Docs. 9–13.) However, the Motion informs that Plaintiffs conceded during negotiations that they had "overestimated the amount initially demanded as unpaid wages under the FLSA." (Doc. 25 at 5 n.2.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wages or unpaid overtime compensation, *plus an additional, equal amount,* as liquidated damages. The parties are correct that a good faith defense to liquidated damages exists, "which gives the court discretion to reduce or deny an award of liquidated damages 'if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) (quoting 29 U.S.C. § 260). "The employer bears the burden of establishing both the subjective and objective components of that good faith defense against liquidated damages." *Id.*

The undersigned cannot recommend approval of the settlement sum, based on the current briefing, for two reasons. First, the Motion states that Plaintiffs have agreed to forgo their claim to liquidated damages, whereas the Settlement Agreements provide for a reduced amount of liquidated damages. Even if the undersigned were to defer to the Settlement Agreements, Defendant has not proffered facts or case law to demonstrate that it is entitled to the benefit of the good faith defense, despite the concession by Plaintiffs. Therefore, the undersigned finds the Motion is due to be denied without prejudice on this basis.

**B. Release**

Next, the parties have agreed to a release for all Plaintiffs in a form similar to the one below, taken from Plaintiff Bragg's Settlement Agreement:

> 4. **Waiver and Release of Wage Claims.** Plaintiff hereby remises, acquits, releases, satisfies and discharges, on her own behalf and on behalf of anyone who could claim by or through her, Defendant, and their predecessors and successors in interest, assignees, parents, subsidiaries, professional employment organizations, divisions and related companies and entities, and their past, present and future shareholders, officers, directors, supervisors, managers, employees, agents, attorneys, insurers, and representatives (hereafter collectively referred to as "Releasees"), in their individual and official capacities, and their heirs and legal representatives, of and from, any and all wage-related claims and demands, past or present known or unknown, and all manner of action and actions, causes of action, suits, administrative proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, trespasses, damages, judgments, executions, warranties, claims and demands whatsoever, in law or in equity, relating to any wage-related claim which Plaintiff and her heirs, executors, administrators, agents, distributees, beneficiaries, successors in interest and assignees, ever had or now have, by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of Plaintiff's execution of this Agreement. Plaintiff agrees never to file a lawsuit against Releasees for any wage-related claim released in this Agreement.

(Doc. 25-1 at 4) (the "Release").

The Release is not limited to Defendant and its heirs and assigns. Rather, the Release extends to various unidentified non-parties. The undersigned cannot approve a release to a "host of individuals and entities" including "unnamed past and present employees, agents, affiliated and subsidiary companies . . ." *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) ("I wonder whether Plaintiff actually knows who he is releasing or why all of these individuals and entities should enjoy the benefit of his release."). The parties have not explained to the Court why so many unnamed parties are being released here, nor have they provided case law to support such a release. Thus, at this juncture and without

the benefit of briefing by the parties, the undersigned will not recommend that the Release be approved in its current form.

### IV. CONCLUSION

Upon consideration of the foregoing, the parties' Joint Motion for Approval of FLSA Unpaid Wage Claim Settlement Agreement (Doc. 25) is **DENIED WITHOUT PREJUDICE**. The parties may file a renewed motion that addresses the issues set forth in this Order and revised settlement agreements, if amended, **on or before December 7, 2022**.[2]

**DONE** and **ORDERED** in Orlando, Florida on November 16, 2022.

---

[2] Upon resubmission, the parties should also state whether the consideration for the separate agreements was greater than $250 for each plaintiff and whether acceptance of the FLSA agreements was conditioned upon acceptance of the separate agreements.